IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELIZABETH SHOVLIN,

              Appellant                      16cv0467

                                      **ELECTRONICALLY FILED**

              v.

PAUL E. KLAAS, BETH ANN KLAAS,
RONDA J. WINNECOUR *Chapter 13
Trustee*,

              Appellees.

## MEMORANDUM ORDER

Before the Court is an appeal from an order of the United States Bankruptcy Court of the

Western District of Pennsylvania. This appeal has been filed by Elizabeth Shovlin ("Shovlin"), a

creditor in the bankruptcy who disagrees with a March 1, 2016 Bankruptcy Court Order in

Adversary Proceeding no. 15-02087-GLT. The Bankruptcy Court granted summary judgment

in favor of Debtors Paul E. Klaas and Beth Ann Klaas ("the Debtors") on Shovlin's claims

seeking to deny Debtors a discharge in the underlying bankruptcy matter. For the reasons that

follow, this Court will affirm the March 1, 2016 Order of the Bankruptcy Court.


### I. Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). A district

court sits as an appellate court in bankruptcy proceedings. *In re Michael,* 699 F.3d 305, 308 n.2

(3d Cir. 2012); see also *In re Professional Management*, 285 F.3d 268 (3d Cir. 2002) (a district

court's jurisdiction is proper as an appeal of the final order of the bankruptcy court under

28 U.S.C. §158(a)).

On appeal from a final order entered by a bankruptcy court the district court applies the following standards of review:

First, the court reviews a bankruptcy court's findings of fact under a "clearly erroneous" standard. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). A factual finding is "clearly erroneous" if the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *In re W.R. Grace & Co.*, 729 F.3d 311, 319, n.14 (3d Cir. 2011); *see also Gordon v. Lewistown Hosp.*, 423 F.3d 184, 201 (3d Cir. 2005). Under this standard, the reviewing court must "accept ultimate factual determinations of the fact-finder unless that determination is either (1) completely devoid of minimum evidentiary support displaying some hue of credibility or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (internal quotations and citations omitted).

Second, the court exercises plenary, or *de novo*, review over any legal conclusions reached by the bankruptcy court. *In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. 2014); *see also Am. Flint Glass Workers*, 197 F.3d at 80.

Third, if a bankruptcy court's decision is a mixed question of law and fact, the court must break down the determination and apply the appropriate standard of review to each. *In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003). The court should "apply a clearly erroneous standard to integral facts, but exercise plenary review of the court's interpretation and application of those facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011) (citation omitted).

Fourth, a bankruptcy court's exercise of discretion is reviewed for abuse. *In re Friedman's Inc.,* 738 F.3d 547, 552 (3d Cir. 2013). A bankruptcy court abuses its discretion

when its ruling rests upon an error of law or a misapplication of law to the facts.  *In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

**II. Factual and Procedural Background**

On December 31, 2009, Debtors filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code, 11 U.S.C. §101 *et seq.*  ("Bankruptcy Code") at Bankruptcy case no. 09-29574-GLT.  Bankruptcy Docket ("Bkrptcy. Dkt.") at doc. no. 1.  As a result of an increase in the monthly mortgage payment due, on January 23, 2011, Debtors filed an amended Chapter 13 Plan ("the Plan") on January 23, 2011.  Bkrptcy. Dkt. at doc. nos. 99, 102.  The Bankruptcy Court confirmed the Plan by way of an order dated March 14, 2011.  Bkrptcy. Dkt. at doc. no. 106.  By that same March 14, 2011 Order, the Bankruptcy Court directed creditors to file any objections to plan confirmation within 28 days, noting that a failure to file a timely objection would be "deemed a waiver of all objections and an acceptance of the provisions of this confirmed Plan."  Id. at p. 2.  No objections to the confirmation order were filed.

The term of the Debtors' Plan was sixty (60) months.  Adversary Proceeding No. 15-02087-GLT Docket ("Adv. Dkt.") at doc. no. 26 (referred to herein as "Joint Statement of Facts") ¶ 15.  The Plan required Debtors to make 60 monthly payments with the amount of the monthly payment changing to $3,017.00 per month effective February 2011 and beginning with Plan month number 14.  Bkrptcy. Dkt. at doc. no. 102.  The Plan provided for payment of Debtors' secured claims, the cure and reinstatement of their mortgage loans, and a projected dividend to the unsecured creditors, including Shovlin.  Id.  The Plan also indicated a fee of 2.8% for the Standing Chapter 13 Trustee ("Trustee").  Id.  Under the Plan as confirmed on March 14, 2011, Debtors were to make plan payments consisting of 13 monthly plan payments of $2,485.00 each on or before February 1, 2011 and 47 monthly plan payments of $3,017.00 each on or

before January 13, 2015.  Bkrptcy. Dkt. at doc. no. 102.    As stipulated by the parties in the

adversary action, and according to the Trustee's receipt and disbursement history, Debtors made

13 plan payments of $2,485.00 on or before February 1, 2011 and made 47 plan payments of

$3017.00 on or before January 13, 2015, with payments totaling $174,104.00 on or before

January 13, 2015.  Joint Statement of Facts ¶ 9.  Thus, the 60 monthly payments required by the

Plan were made by January 13, 2015, which is within the Plan's 60 month period.  Debtors made

two additional payments after January 13, 2015, totaling $2,665.00, making one payment of

$1,123.00, on March 16, 2015, Joint Statement of Facts ¶ 9, in order to cure a shortfall in plan

funding based on the Trustee's indication of a projected shortfall, Bkrptcy. Dkt. at doc. no. 137

¶¶ 3, 5, 6, and an additional payment of 1,542.00, on March 23, 2015, for legal fees to Debtors'

counsel in accordance with the Bankruptcy Court's March 16, 2015 Order approving same.  Joint

Statement of Facts ¶ 9; Bkrptcy. Dkt. at doc. no. 144.  The Debtors' plan payments totaled

$176,769.00 on or before March 23, 2015.  Joint Statement of Facts ¶ 9.

Although the Plan had accounted for a Trustee's fee of 2.8%, Bkrptcy. Dkt. at doc. no.

102, at some point during the pendency of the bankruptcy, the 2.8% fee increased. The Trustee

actually received $5,446.27 in administrative fees, but the Plan had only projected a fee of

$4,740.91.  Adv. Dkt. at doc. no. 9, Ex. 2 [Trustee's Final Report and Account]; Bkrptcy. Dkt. at

doc. no. 102.  Thus, more than $700.00 of the $1,123.00 shortfall in plan funding was due to the

change in fees.  Ultimately, on the Trustee's final accounting, although Debtors made the two

additional payments totaling $2,665.00 after January 13, 2015, the Trustee issued a refund to the

Debtors in the amount of $1,486.49, Joint Statement of Facts ¶ 15, as the Plan was then

overfunded.  Adv. Dkt. at doc. no. 9, Ex. 2.

The Debtors' largest unsecured creditor was Shovlin's father, Mr. Guy Petrone ("Mr.

Petrone"). *See* Bankruptcy case no. 09-29574-GLT Claim's Register, bankruptcy claim no. 31-

1. Mr. Petrone's claim consisted of a joint debt for certain loans owed by the Debtors and an

additional amount for unpaid rent regarding which only Debtor Mr. Klaas was liable. *Id.* After

Mr. Petrone's death, the claim was transferred to Shovlin as indicated by a filing with the

Bankruptcy Court on March 21, 2014. Bkrptcy. Dkt. at doc. no. 132. At no time during the

pendency of the bankruptcy proceeding did Mr. Petrone or Shovlin file any objection to the Plan.

After Debtors made their 60th monthly payment in accordance with the Plan, the Trustee

identified a shortage in the Plan fund, resulting in the Trustee filing a Motion to Dismiss the

bankruptcy case on January 29, 2015. Bkrptcy. Dkt. at doc. no. 137. The Motion to Dismiss

asserted that the Plan base had not been met, the Plan was not complete, and an additional

$1,123.00 was needed to complete the Plan. Id. at ¶¶ 3, 5, 6. Shovlin joined the Trustee's

Motion to Dismiss. Bkrptcy. Dkt. at doc. no. 140. The Trustee also indicated in the Motion to

Dismiss that she would withdraw the motion if the Debtors remitted sufficient funds to complete

the Plan. Bkrptcy. Dkt. at doc. no. 140 ¶ 6. In Response, Debtors indicated that they would

complete the funding of their Plan by March 25, 2015, which was the date the Bankruptcy Court

set for a hearing on the Trustee's Motion to Dismiss. Bkrptcy. Dkt. at doc. nos. 138, 139. The

Debtors made the additional payment prior to March 25, 2015 in order to cure the asserted

shortfall, and the Trustee withdrew her Motion to Dismiss at the hearing as she previously had

indicated that she would do. *In re Klaas*, 533 B.R. 482, 485 (W.D. Pa. Bankr. 2015).[1]

Shovlin, however, argued in favor of the Motion to Dismiss, contending that payments to

fund the Plan were made after the 60 month period for a confirmed plan, and the Debtors could

---

[1] The Debtors indicated in the Answer to the Adversary Complaint that rather than contest the Trustee's position as to a $1,123.00 shortfall in the plan base, they simply paid it. Adv. Dkt. No. 9 ¶ 17.

not fulfill the requirements of 11 U.S.C. § 1328 for a discharge as a result because Sections 1322 and 1325 prohibit a Chapter 13 plan from exceeding 60 months and payments were needed after the 60 month deadline. Bkrptcy Dkt. at doc. no. 140 ¶11, 12. Shovlin urged the Bankruptcy Court to dismiss Debtors' bankruptcy case as a result under 11 U.S.C. § 1307. Shovlin also urged that dismissal was required because the Debtors had not timely completed their required post-petition debtor education course. The Bankruptcy Court declined to dismiss the bankruptcy case for either reason by order dated June 4, 2015. The Bankruptcy Court indicated in its opinion that there was no statutory provision in the Code prohibiting Debtors from curing a plan default within a reasonable time after the 60 month plan period had expired. *In re Klaas*, 533 B.R. at 487. It further found that there was no cause for dismissal under Section 1307, that Debtors could and had promptly cured the plan shortfall, and that there was no harm to creditors. Id. at pp. 488-489. The Bankruptcy Court also determined that Debtors were not delinquent regarding their debtor education requirements**.** Id. at p. 486. In the words of the Bankruptcy Court, the Bankruptcy Court having denied the Motion to Dismiss, thereafter "the bankruptcy case continued to progress towards completion." Doc. No. 1-17 at p. 6 (March 1, 2016 Memorandum Opinion of Bankruptcy Court on Summary Judgment).

Shovlin appealed the June 4, 2015 Order on the Motion to Dismiss to this Court, which affirmed the Bankruptcy Court's June 4, 2015 Order by its Opinion and Order dated August 28, 2015. *Shovlin v. Klaas*, 539 B.R. 465 (W.D. Pa. 2015). Shovlin then appealed to the United States Court of Appeals for the Third Circuit this Court's decision affirming. That matter is now pending before the Court of Appeals at Third Circuit Case No. 15-3341.

In addition to prosecuting the Motion to Dismiss, on April 20, 2015 Shovlin filed a two count adversary action in the bankruptcy at Adversary Proceeding no. 15-02087-GLT seeking an

order denying Debtors a discharge. Shovlin argued as the basis for the denial of a discharge the same reasons she offered in support of the Motion to Dismiss—the failure of the Debtors to make all plan payments within 60 months and the alleged failure regarding the post-petition debtor education course. Specifically, Count I of the Adversary Complaint objected to a discharge on the basis that: Debtors failed to make all payments on or before January 30, 2015, which is the date five years from the date when Debtors' first plan payment was due; § 1322(d) of the Bankruptcy Code prohibits Chapter 13 plans from lasting longer than five years; and Debtors failed to make all payment required under their confirmed plan within five years. Doc. no. 1-3 ¶¶ 15-17. Count II objected to discharge asserting that the Debtors failed to timely file a certificate of completion of the post-petition personal financial management course as required by 11 U.S.C. § 1328(g)(1). Doc. no. 1-3 ¶¶ 18-23.

The Debtors sought summary judgment in the adversary action, asserting that they had satisfied all the requirements under the Code for receiving their discharge under § 1328. The Trustee agreed with Debtors' position arguing to the Bankruptcy Court that:

> Debtors are routinely permitted reasonable opportunities to cure plan defaults. In fact, successful plan completion is a goal to be heralded, as it serves public policy goals. The Trustee asserts that debtors should be afforded a reasonable opportunity at the expiration of their plan term to complete their plan goals, if such goals are within reach.

Adv. doc. no. 24 at 4.

Not surprisingly, on March 1, 2016, the Bankruptcy Court entered summary judgment in favor of Debtors and against Shovlin on both of Shovlin's claims seeking denial of a discharge as it had held in its prior Opinion that Debtors were entitled to cure the unforeseen shortage within a reasonable time, the Debtors had satisfied the personal financial management requirements and Shovlin had not argued any other basis to deny the discharge, such as bad faith, and had not

shown any adverse impact to creditors.   Doc. no. 1-17 at p. 10, 15- 17.  In its Opinion regarding

the discharge, the Bankruptcy Court recognized that its prior decision on the Motion to Dismiss

the bankruptcy had been affirmed by this Court and indicated that based on the law of the case

doctrine it would adhere to its prior decision and further that Debtors were entitled to a discharge

based on the Court's analysis of the relevant statutory provisions and caselaw.  Doc. no. 1-17 at

p. 17.

     Shovlin appealed  to this Court the grant of summary judgment to Debtors on the

adversary action claim seeking denial of a discharge on the basis of the failure of Debtors to

make all plan payments within the 60 month period provided for by the Plan.  Shovlin, however,

does not assert in this appeal as a basis for denying Debtors their discharge the alleged failure

regarding the personal financial management requirements under 18 U.S.C. § 1328(g)(1), and

thus, the Court does not address it.  Notably, Shovlin does not alternatively argue in this appeal

that if payments by the Debtors may be permitted after the five year period provided in 18 U.S.C.

§§ 1322 and 1325 to cure a shortfall in plan funding, the Bankruptcy Court abused discretion in

permitting them to do so in this case.   Thus, the Court will not assign as error here the

Bankruptcy Court's decision to permit payments after the 60th month if the Bankruptcy Court

had the authority to do so.


**III. Legal Analysis**

     Federal Rule of Bankruptcy Procedure 7056 provides that "Rule 56 F.R.Civ.P. applies in

adversary proceedings, except that any motion for summary judgment must be made at least 30

days before the initial date set for an evidentiary hearing on any issue for which summary

judgment is sought, unless a different time is set by local rule or the court orders otherwise."

Fed. R. Bankr. P. 7056.  Shovlin does not assert that there are any factual disputes present preventing summary judgment; rather, she raises only issues that are purely non-factual in nature.  Thus, the Court exercises plenary review over the legal conclusions reached by the Bankruptcy Court.   "Because summary judgment is only appropriate where there is no issue of material fact and judgment is appropriate as a matter of law, [this Court's] review of [the Bankruptcy Court's] grant of summary judgment is plenary."  *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993).

## A.    Law of the Case Doctrine

As a threshold issue, this Court addresses the law of the case doctrine.  The doctrine embodies a prudential policy counseling in favor of a court not re-deciding issues that it earlier resolved in the case.  *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997).   The doctrine applies not only to a coordinate court in the same case, such as where the case is transferred from one district court to another, but also to the court's own prior decisions.  123 F.3d at 116.   As indicated by the United States Supreme Court in *Christianson v. Colt Indus. Operating Corp*., 486 U.S. 800, 817 (1988), absent extraordinary circumstances, a court should be loath to revisit its prior decision in the same case though it has the power to do so.  *Christianson* further instructed that such a decision to revisit should be limited to cases where the prior decision was clearly erroneous or where the prior decision would work a manifest injustice.  Id.

As indicated in *Magnesium Elektron, Inc*., the Third Circuit has recognized

"extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation.  They include situations in which:  (1) new evidence is available; (2) a supervening new law has been announced; and (3) the earlier decision was clearly erroneous and would create a manifest injustice.

123 F.3d at 116-117. None of the three situations articulated in *Magnesium Electron, Inc.* presents itself here. Also, the Court of Appeals has not yet issued a decision on the prior appeal regarding the Motion to Dismiss and this Court's prior Opinion remains undisturbed. Accordingly, in resolving the present appeal, this Court will adhere to its prior determinations as to issues expressly resolved or necessarily resolved by implication. *Williams v. Hilton Group, PLC*, 261 F. Supp. 2d 324, 331 (W.D. Pa. 2003) (finding law of the case did not preclude considering issue as it was not directly or by necessary implication addressed in prior rulings).

This Court determined in the prior appeal that unanticipated shortages in plan payment or funding can be permissibly cured within a reasonable time after the 60 month period contemplated by a plan. *Shovlin*, 539 B.R. at 422. Thus, Sections 1322 and 1325 do not prohibit such payment to cure a shortfall after the 60th month. Id. This Court adheres to its prior decision. For completeness and ease of reference, the Court will briefly restate *infra* where helpful the reasoning in its prior Opinion as it relates to the present appeal.

The following guiding principles inform this Court's present decision regarding the discharge: that an honest but unfortunate debtor presumptively is entitled to a fresh start, *Harris v. Viegelahn*, 135 S.Ct. 1829, 1835 (2015); *Grogan v. Garner*, 498 U.S. 279, 286-287 (1991); that the denial of a discharge is an "extreme step and should not be taken lightly," *Rosen*, 996 F.2d at 1531; and that "[e]xceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995).

"The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." Id. at p. 1113. The United States Supreme Court in *Harris v. Viegelahn*, 135 S.Ct. at 1829, observed "the Bankruptcy Code provides diverse courses overburdened debtors may pursue to gain discharge of their financial

obligations, and thereby a 'fresh start.'" Chapter 13 bankruptcy chosen by Debtors is one of the roads an individual debtor may take to gain that fresh start. Id. at p. 1835.

### B.    Sections 1322 and 1325 of the Code

Shovlin asserts that Section 1322 of the Bankruptcy Code specifically limits a debtor's plan to a 60 month repayment period. She argues that because payments were made to fulfill the Plan after the 60 month period, Debtors did not make all of the payments under the Plan, the Plan was "breached" and thus, they are not entitled to a discharge under 11 U.S.C. § 1328(a).

Section 1322 of the Bankruptcy Code entitled "Contents of Plan" provides under subsections (d)(1) and (d)(2) that "the plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d)(1) & (2). Once a plan is established in accordance with Section 1322, a Bankruptcy Court then decides whether to confirm that plan under 11 U.S.C. § 1325, entitled "Confirmation of Plan." Section 1325 provides that the court shall confirm the plan if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title." 11 U.S.C. § 1325(a)(1).

Again on this appeal, Shovlin argues that the plain meaning of the words set forth in Sections 1322 and 1325 do not permit a debtor from making a plan payment beyond the 60th month. *See* Doc. no. 6, p. 12-13. This Court previously considered Sections 1322 and 1325 and held that Debtors' Plan complied with Section 1322 as it did not call for more than 60 monthly payments and held that the Bankruptcy Court properly confirmed the Plan under Section 1325 as the Plan complied with Section 1322 and there were no objections to the Plan. *Shovlin v. Klaas*, 539 B.R. 465, 470 (W.D. Pa. 2015).

Finding *In re Henry*, 368 B.R. 696 (N.D. Ill. 2007), persuasive and in consideration of the plain language of the statutory provisions, this Court held in the prior appeal that nothing in the

Code, including Sections 1322 and 1325, prevents a bankruptcy court from permitting a Chapter 13 debtor a reasonable time after the time period for a confirmed 60 month plan to cure an unforeseen shortage in the plan funding. 539 B.R. at 472-473. This Court reaffirms its position.

*In re Henry* made a distinction between a situation when a confirmed plan, due to <u>unknown</u> circumstances prior to the plan's confirmation, ultimately required more than 60 months to complete, such as in this case, and when it is <u>known</u> prior to confirmation that a plan will take more than 60 months to complete. In the former, there is no *per se* bar to permitting payments to complete the plan. *Accord In re Aubain*, 296 B.R. 624 (Bankr. E.D. N.Y. 2003) (allowing debtor to make delinquent final payment after the 60 month time period and after dismissal and reinstating bankruptcy case); *In re Black*, 78 B.R. 840, 842-843 (Bankr. S.D. Ohio 1987) (permitting debtor to complete plan as it was substantially completed by end of 60 month period); Collier on Bankruptcy ¶ 1322.17[2] (15th ed. 2006) ("the court should allow the plan to be completed within reasonable time after the stated term."). In the latter the plan by intent and design would be to make payments beyond the 60 month period from the outset, which would not permit for confirmation of the plan.

The Bankruptcy Court in *In re Harter*, 279 B.R. 284, 288 (S.D. Bankr. 2002), similarly held that the requirement for length of plan term in 1322(d) was not a "drop dead" provision prohibiting payments beyond that date if necessary to complete the plan. The court in that case permitted the debtor to tender the minimum plan payments within a reasonable time period after the five year plan completion date and determined the plan was cured. Likewise, *In re Brown*, 296 B.R. 20, 21 (N.D. Bankr. 2003), in which the court permitted an additional year to actually complete the plan, observed that "[t]here are many reasons why a Chapter 13 plan might take longer to complete than contemplated at the time of confirmation." 296 B.R. at 21.

Although Sections 1322 and 1325 expressly prohibit a debtor and a Bankruptcy Court from knowingly proposing and confirming a plan that extends beyond a five year period (60 months), these sections of the Bankruptcy Code do not mandate either dismissal of a bankruptcy case as argued on the prior appeal or denial of a discharge as argued in this appeal if a debtor simply needs a reasonable period of time to cure an unanticipated shortfall incurred during the 60 month plan period.

### C.    Statutory Provisions for Chapter 13 Discharge

The Court now turns to the Code provision governing discharge in Debtors' Chapter 13 bankruptcy.  Section 1328, 11 U.S.C., provides:

> (a) Subject to subsection (d), <u>as soon as practicable after completion by the debtor of all payments under the plan</u>, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
>
>> (1) provided for under section 1322(b)(5);
>>
>> (2) of the kind specified in section 507(a)(8)(C) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a);
>>
>> (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime; or
>>
>> (4) for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual.
>
> (b) Subject to subsection (d), at any time after the confirmation of the plan and after notice and a hearing, <u>the court may grant a discharge to a debtor that has not completed payments under the plan</u> only if--

(1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

(2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

(3) modification of the plan under section 1329 of this title is not practicable.

(c) A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt--

(1) provided for under section 1322(b)(5) of this title; or

(2) of a kind specified in section 523(a) of this title.

(d) Notwithstanding any other provision of this section, a discharge granted under this section does not discharge the debtor from any debt based on an allowed claim filed under section 1305(a)(2) of this title if prior approval by the trustee of the debtor's incurring such debt was practicable and was not obtained.

(e) On request of a party in interest before one year after a discharge under this section is granted, and after notice and a hearing, the court may revoke such discharge only if--

(1) such discharge was obtained by the debtor through fraud; and

(2) the requesting party did not know of such fraud until after such discharge was granted.

(f) Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge--

(1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or

(2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.

(g)(1) The court shall not grant a discharge under this section to a debtor unless after filing a petition the debtor has completed an instructional course concerning personal financial management described in section 111.

(2) Paragraph (1) shall not apply with respect to a debtor who is a person described in section 109(h)(4) or who resides in a district for which the United States trustee (or the bankruptcy administrator, if any) determines that the approved instructional courses are not adequate to service the additional individuals who would otherwise be required to complete such instructional course by reason of the requirements of paragraph (1).

(3) The United States trustee (or the bankruptcy administrator, if any) who makes a determination described in paragraph (2) shall review such determination not later than 1 year after the date of such determination, and not less frequently than annually thereafter.

(h) The court may not grant a discharge under this chapter unless the court after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge finds that there is no reasonable cause to believe that-

> (1) section 522(q)(1) may be applicable to the debtor; and
> (2) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).

11 U.S.C. § 1328 (emphasis added).

On the weight of Shovlin's argument regarding the provisions of Sections 1322 and 1325, which the Court has rejected, *Shovlin*, 539 B.R. at 470, Shovlin contends that Debtors are not entitled to a discharge under Section 1328. Shovlin argues that there is no basis for excusing non-compliance with Section 1328(a). Doc. no. 6 at 8. By granting Debtors summary judgment, however, the Bankruptcy Court did not excuse any non-compliance with Section 1328(a). Section 1328(a) says nothing of when payment finally funding the plan is made, whether made within the anticipated 60 months or after the planned 60 months where, as here, there is an unanticipated shortfall and the shortfall is rather quickly made up with additional remittance by the Debtors. Again, the 60 month limit is addressed specifically to plan confirmation.

Regarding Sections 1307, 1322, 1325 and 1328, the Chapter 13 Trustee aptly states in her brief "that plan confirmation, discharge and case dismissal are distinct concepts governed by different code provisions." Doc. no. 10 at 7.

The Court is guided by *United States v. Cooper*, 396 F.3d 308, 310 (3d Cir. 2005), requiring a finding of ambiguity to go beyond the text of the statute. There is no ambiguity in Section 1328(a)—that the Bankruptcy Court "as soon as practicable after completion by the debtor of all payments under the plan . . . shall grant the debtor a discharge of all debts provided for by the plan." The Trustee points out that nothing in Section 1328 provides for the bankruptcy court to deny a debtor a discharge if the final payment is made within a reasonable time after the 60 months has ended. Doc. no. 10 at 7. Indeed, this Court observes that the plain language of Section 1328(a) does not address the timing of the payments at all—it just requires that they have been made.

There is no doubt that Debtors completed all payments under the Plan—the 60 required monthly payments being made within the five year time period and the additional amount to fully fund it being made shortly thereafter on notice of the unanticipated shortage. Similar to her arguments in the prior appeal, Shovlin conflates the requirements of Section 1322 regarding contents of a plan and Section 1325 regarding plan confirmation with the language of Section 1328(a) which mandates the Court grant a discharge on completion by a debtor of all payments under the plan.

### D. Hardship Discharge is Inapplicable

Shovlin attempts to argue that because the Debtors made payments to fund the Plan after the 60 month period for the Plan, the only route for a discharge was to request a hardship discharge under Section 1328(b), which they did not do. Doc. no. 6 at 8. The provisions of

Section 1328(b), however, govern discharge in cases where a debtor <u>has</u> <u>not</u> <u>completed</u> <u>payment</u> under a plan.  Section 1328(b) is inapplicable here as Debtors completed all the payments under the Plan, both by making the 60 monthly payments required by the Plan and within the plan period and by expeditiously paying additional amounts when the Trustee notified of the shortfall in plan funding by virtue of her filing the Motion to Dismiss.  Debtors do not seek an avoidance either of making all 60 payments provided for under the Plan or of fully funding the Plan, both of which they accomplished.  Joint Statement of Facts ¶¶ 9.  Nor do Debtors fall under the conditions provided for in Section 1328 requiring denial of a discharge and Shovlin has not asserted any argument here that these provisions apply.  *See* 18 U.S.C. § 1328(b), (c), (d), (e), (f), (g) or (h); Joint Statement of Facts ¶¶ 2-4, 16.

The plain language of Section 1328(a) dictates the result here regarding the action seeking to deny a discharge.   Because all 60 monthly payments were made as required by the Plan and the payment was made to cure the shortfall fully funding the Plan, the Bankruptcy Court was mandated by Section 1328(a) to grant a discharge.

Under Shovlin's interpretation of the Code, because the Debtors were able to complete payments to fund the Plan and made the payments to fully fund the Plan after the Trustee's motion indicating the shortfall, Debtors do not qualify for a hardship discharge and moreover, they cannot qualify for a discharge at all.  Shovlin's urged interpretation manufactures an absurd result.  The interpretation of this Court and the Bankruptcy Court does not render Section 1328(b) irrelevant as Shovlin suggests. Doc. no. 6 at 10.  The provisions for a hardship discharge under Section 1328(b) simply did not apply.  Shovlin's approach would graft onto the discharge provisions of Section 1328 an additional requirement that a bankruptcy court could only grant a

discharge if no amount to fund the plan was remitted after the 60 month period contemplated by the plan. Section 1328 does not contain such a requirement and this Court declines to institute it.

### E. Consideration of Contract Principles

Both Shovlin and the Trustee rely on contract principles to support their respective positions. Shovlin contends that Debtors are not entitled to a discharge as a result of an asserted "breach" of the Plan and that the Plan was like a contract with a conditional limitation clause, terminating the agreement by the 60 month deadline. Citing *In re Shenango Group, Inc.*, 501 F.3d 338, 344-45 (3d Cir. 2007), *In re Borkowski*, 446 B.R. 220, 225 (Bankr. W.D. Pa. 2011), and *In re Velo Holdings*, 475 B.R. 367, 382 (Bankr. S.D.N.Y. 2012), Shovlin argues that Debtors' failure to meet their Plan obligations within the five years permitted for a Chapter 13 plan resulted in a material and irreparable breach of the Plan with no option to cure. Doc. No. 6 at 11. The cases relied on do not advance Shovlin's position.

*In re Shenango Group, Inc.* was not a Chapter 13 case as represented by Shovlin and simply indicated that the court applied contract principles when construing a confirmed Chapter 11 plan of reorganization. *In re Borkowski* is not instructive as it involved a creditor's inexcusably belated attempt to challenge underfunding of mortgage arrearages and an already granted discharge to the debtor left undisturbed by the court. Finally, *In re Velo Holdings*, 475 B.R. 367 (2012), dealt with a determination that the credit card processing contract involved was an executory contract and is likewise not instructive here. The Trustee also points out that *In re Velo Holdings* does not support Shovlin's position because it involved interpretation of a credit card processing contract that <u>did</u> <u>not</u> contain a conditional limitation clause specifying termination of the contract on occurrence of a specified event. Likewise, Chapter 13 plans and

the Plan here do not contain language regarding termination of "the contract." Doc. no. 10 at 11; *see* Bkrptcy. Dkt. at doc. no. 102.

The Trustee further responds to Shovlin's contract arguments that contract damages theory actually supports the discharge. Doc. no. 10 at 11. The goal of damage remedies is to protect the promisee's "interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed." RESTATEMENT (SECOND) OF CONTRACTS, § 344(a) (1981); *see also Scully v. U.S. WATS, Inc.*, 238 F.3d 497, 512 (3d Cir. 2001). The Trustee observes that there is no evidence that the delay in plan completion as a result of the modest and rather immediate payment to address the shortfall resulted in any injury to Shovlin. Citing to the RESTATEMENT (SECOND) OF CONTRACTS, § 229 (excuse of a condition to avoid forfeiture), the Trustee argues that contract theory supports that a debtor should be permitted to cure an unanticipated arrearage that arises during a 60 month plan, particularly in light of the disproportionate forfeiture that would occur. Doc. no. 10 at 13. The Trustee's position is in essence that "Debtors should be afforded a reasonable time to complete their plan goals, if such are in reach." Doc. no. 10 at 11.

The Court agrees with the Trustee. There is nothing on this record to show an adverse impact on any creditor caused by the fulfillment of the Plan as achieved by Debtors here--on an immediate cure of the asserted shortage in plan funding. Thus, there is no need for a remedy to the Creditor, particularly in light of the harsh remedy requested—denial of a discharge. Indeed, Rosen specifically instructs that denial of a discharge in bankruptcy is an extreme step not to be taken lightly, rather than its first resort as Shovlin urges. *Rosen*, 996 F.2d at 1531.

This is not a case where there is an enormous shortfall in plan funding or even a case where at the end of the plan term the scheduled plan payments were not being made. The modest

plan funding shortage here was promptly paid and without any argument of adverse effect to creditors from the funding. Moreover, the vast majority of the asserted shortfall was due to an increase in the Trustee's fees. Under Shovlin's approach, it would matter naught if all, or as here substantially most, of the shortage were caused by an increase in the Trustee's fee because <u>any</u> payment made after the 60 month period in Shovlin's eyes renders completion a nullity. It further would not even matter under her approach if the Trustee's fee increase occurred at the tail end of the 60 month period with little or no notice or more importantly no time to cure before the end of the 60 month period.[2] Nothing in Section 1328 requires such a result.

Section 1322(d), which governs the Plan's duration and limits it to five years, was created to protect the debtor from become a "wage slave." *Shovlin*, 539 B.R. at 473. Shovlin attempts to use as a sword provisions of the Code intended as a shield. This Court rejects her approach as contrary to the plain language of the statutory provisions and unsound. Shovlin attempts to insert requirements into the statutory provisions and scheme that simply are not there. As nothing in Sections 1322, 1325, 1328 prohibits the payment made by Debtors for the shortage in order to complete plan funding, under the plain language of Section 1328(a) Debtors here were entitled to a discharge. Thus, the Bankruptcy Court appropriately entered summary judgment in favor of Debtors in the adversary action seeking to deny Debtors a discharge and this Court will affirm.

In sum, this Court finds that there are no material issues of fact and based on the uncontested facts present in this case, the Bankruptcy Court appropriately granted summary judgment in favor of Debtors and against Shovlin on Shovlin's Adversary Complaint seeking denial of a discharge.

---

[2] 28 U.S.C. § 586(e)(1)(B) governs the setting of a standing Chapter 13 Trustee's fee by the United States Trustee. The Court notes as well that the Trustee's fee appears well below the 10% cap provided for by statute. 28 U.S.C. § 586(e)(1)(B)(i).

**IV. Conclusion**

Based on the foregoing law and authority, the Court hereby **AFFIRMS** the March 1, 2016 Order of the Bankruptcy Court granting summary judgment to Debtors on Shovlin's claims seeking to deny Debtors a Discharge.

**SO ORDERED**, this 29th day of July, 2016.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge